THE ALASKA.

MORGAN'S L. & T. R. & S. S. CO. v. THE ALASKA.

(District Court, E. D. New York. April 9, 1896.)

SALVAGE COMPENSATION—OCEAN TOWAGE.

$7,500 awarded to a freight steamer worth $250,000 (her cargo not being considered, because of the "Harter Act"), for towing into New York, her port of destination, being a distance of 250 miles, a freight steamer, valued, with her cargo and freight, at £31,390, which had been blown off the coast to the edge of the Gulf Stream, and was in peril only because she had exhausted her coal supply, there being difficulty and danger in getting the hawsers aboard because of her terrific rolling, but the towing being accomplished, after the first few hours, in a calm sea, and without loss, except a delay of three days, and the breaking of both hawsers.

This was a libel in rem by Morgan's Louisiana & Texas Railroad & Steamship Company against the steamship Alaska, her cargo, etc., to recover compensation for salvage services.

Chas. H. Tweed (R. D. Benedict, of counsel), for libelant.
Convers & Kirlin, for claimant.

BENEDICT, District Judge.   This is an action brought to re-
cover salvage compensation for services rendered to the steam-
ship Alaska in towing her into the port of New York, in February,
1895, under the following circumstances:   The Alaska was a
steamer of 1,799 tons burden, loaded with phosphate and cotton,
bound from Wilmington, Del., to Ghent, by the way of Norfolk.
She left Wilmington with but a few tons of coal, expecting to
arrive at Norfolk in the course of less than a day, and there take
in the coal necessary for her voyage.   Soon after leaving Wil-
mington she encountered a violent storm of three days' duration,
during which her supply of coal was reduced to four tons, and she
was compelled to burn her wood fixings in order to raise steam
enough to keep her engines going.   She burnt up one of her boats,
three bales of cotton, using oil and paraffine to make a blaze, and
three large wood derricks, used for taking in cargo.   By this
means she was able to use her engines to a certain extent, but she
could make no headway.   On Sunday morning, while the storm
was yet blowing, she sighted the steamer Excelsior, and displayed
to her signals of distress and a request for assistance.   There is
some little contradiction in the evidence as to what transpired at
this time between the two parties in regard to the place where the
Alaska should be towed,—whether to Norfolk, where she was
bound, or to New York, where the Excelsior was bound.   This is
of little importance, for, although the Alaska was towed to New
York, she was not thereby put to any additional expense for her
coal, nor did she suffer any loss.   When the Excelsior took the
Alaska in tow, the sea was very heavy, the ship was in the trough
of the sea, and rolling terribly, so that it was impossible for the
boat sent from the Excelsior to get alongside.   The Alaska had
no hawser by which she could be towed, and hawsers furnished by
the Excelsior were used.   After a good deal of exertion, two
hawsers of the Excelsior were made fast to the Alaska by means
of heaving lines, and the Excelsior started with her about 10:30
in the morning of the 11th.   The course taken was in the direction
of Norfolk, until they got into smooth water, at about 2 o'clock
p. m.   Then the Excelsior straightened up for New York, where
she arrived at about 4 o'clock p. m. Tuesday.

Upon the evidence, it seems to me that the captain of the Ex-
celsior judged wisely when he determined to go to New York, in-
stead of attempting to take the Alaska to Norfolk.   There was
great probability of ice in the Chesapeake Bay.   She would be ob-
liged to anchor off the Capes, and less time would be required to
tow to New York.   As already stated, it made no difference to the
Alaska whether she was taken to Norfolk or to New York.   After
the Excelsior straightened up for New York, the weather was fair,
and the towing was accomplished without difficulty, although there
was plenty of ice, covering the ocean as far as eye could see in
some places.   When near Sandy Hook, both hawsers were parted,

owing to the failure of the tow to follow the steamer. The Alaska was then taken charge of by a tow boat, which had been sent by the owners of the Excelsior, on being informed of her position, and the Alaska was conducted to a safe place in the harbor without having sustained any injury whatever. The Alaska was a freighting vessel. She had no passengers, and was uninjured in her hull and engines, but simply was deprived of ability to make headway because she had no coal wherewith to make steam. She had sails, with which the captain says he guesses he could have made a little headway, but no attempt was made to use them. When she was taken in tow she was on the inner edge of the Gulf Stream, and apparently had drifted somewhat to the eastward. She was, however, in the track of vessels, as shown by the fact that she was picked up by the Excelsior while on her regular course, and also that another steamer was sighted by her. She was in peril, of course, but not in so great peril as she would have been if she had been outside of the track of vessels going up and down the coast. The liberal rewards given by the admiralty court for services of this character have greatly diminished the danger in this locality. The value of the Alaska was £8,000, her cargo was valued at £22,000, and her freight at £1,390. The Excelsior was also a freighting ship, on her regular trip from New Orleans to New York. She had no passengers. She was detained 17 hours in rendering this service to the Alaska, and she suffered no damage, save only the breaking of two hawsers. Her value was $250,-000. The value of her cargo is not considered, owing to the provisions of the "Harter Act." In getting hold of the Alaska considerable skill was displayed. She was rolling terrifically, and it was not accomplished without some hazard to the first officer and the four men who went in the boat to make fast the lines. The distance the Alaska was towed was 250 miles. Although the Excelsior sustained no injury in performing this service, it was not unattended with peril to her. Such towing service is always attended with peril. I have therefore no hesitation in awarding a salvage compensation for the services rendered by the Excelsior. As to the amount, I note the fact that the Excelsior was a freighting ship, without passengers, and that delay was not as serious a matter to her as it would have been to one of the passenger steamers. I take notice that all the skill necessary for this service was displayed and rendered voluntarily, and at the request of the master of the Alaska, and that thereby the Alaska was rescued from a position of danger without injury or loss. I take notice, also, of the value of the salving vessel and of the saved vessel and her cargo; and I have examined the cases to which I have been referred. Looking at all the circumstances of the case, I am of the opinion that $7,500 will be a proper salvage compensation to be awarded in this case.